UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ROBERT HERSKOWITZ,

        Plaintiff,

      -against-

NACHMAN KANOVSKY,

          Defendant.
------------------------------------------------------X
STATE OF NEW YORK    )
COUNTY OF NEW YORK  )ss.:

CASE No. 04 CV 04582 (JSR)

**REPLY AFFIDAVIT OF
NACHMAN KANOVSKY**

NACHMAN KANOVKSY, being duly sworn, hereby deposes and says:

1.     I am the named Defendant in this action, am over 18 years of age, and I hereby submit this Affidavit upon personal knowledge in reply to plaintiff's Opposition to a Motion to Dismiss the Complaint in Lieu of an Answer previously filed on my behalf.

2.     Plaintiff Robert Herskowitz has submitted an Affidavit in Opposition full of innuendo and outright accusations of all variety of wrongdoing on my part, from undue influence to fraud to criminal behavior. However, despite the strenuous attempts of plaintiff to besmirch me, his opposition is nothing more than a desperate bid to distract from the sole issue before this Court, i.e. whether this matter should be dismissed because it is identical to a matter presently pending in the New York State Supreme Court, Sullivan County.

3.     Herskowitz first argues that the Sullivan County action has been "abandoned." In fact, the Sullivan County action is listed by the court as "active," and has not been abandoned. Annexed hereto as Exhibit "J" is the listing from the official New York State Unified Court System with no indication that the matter has been dismissed. My attorneys

1

advise me that if Herskowitz is dissatisfied with the pace of discovery, the appropriate measure would be to request a discovery conference in the State court, not to file a separate Federal action. Moreover, I understand that Herskowitz also could have filed a Motion to preclude evidence, and a Note of Issue, if he felt that the matter was not moving at an acceptable pace.

4. Herskowitz next argues that the construction contract and the "Additional Rider," annexed to defendant's initial moving papers as Exhibit "D," are discrete, separable documents, and that this Court should therefore separately adjudicate the "Additional Rider." For a myriad of reasons, this is obviously not the case.

5. The very title of the document in question is "Additional Rider." This makes clear the parties' intention that the document be appended to an underlying contract. The only other contractual relationship between the parties was the Contract of Sale for the Townhouse. More to the point, the document explicitly refers to the "Contract and previous riders." Thus, even before examining the substance of the document, it is evident that from its form it was part and parcel of the underlying real estate contract.

6. Turning to the contents of the "Additional Rider," it provides that at my sole discretion, "$100,000 [is] payable simultaneously with closing of title to Townhouse 77 at Vacation Village, Loch Sheldrake, NY." I only entered into one contract with plaintiff, and it was for the sale of Townhouse 77 at Vacation Village. Obviously, this Additional Rider is referable only to that contract. The express reference to the "closing of title" further belies Herskowitz's fanciful imaginings, and leaves no doubt that this document was intended as a rider to the underlying real estate contract.

7. Moreover, my attorneys advise me that if, as Herskowitz so strenuously urges,

the "Additional Rider" is unconnected to the underlying real estate contract, but stands alone as a discrete contractual arrangement, then it must fail for lack of consideration. Standing on its own, without reference to the real estate contract, the Additional Rider does not obligate me to do anything. I am advised that such an agreement is simply unenforceable as a matter of law.

8.      Herskowitz's additional assertion that the differing dates of the Contract and the Riders is some evidence that they are separable is also of no moment. (As the Court will note, the initial Construction Agreement is dated April 9, 2000, the "Additional Rider" is dated April 15, 2000, and the Rider is dated April 16, 2000. ) This was a heavily negotiated transaction, and Mr. Herskowitz took every opportunity to amend or alter the agreement. In fact, the April 16, 2000 Rider (which Herskowitz admits is part of the underlying contract) was drafted by his attorney. Nevertheless, all of the separate parts form only one whole: the contract for sale of Townhouse 77.

9.      As a result, it is apparent that none of these agreements are severable, and must all be considered together. As such, it is respectfully submitted that to deny this Motion would be to run the significant risk of piecemeal litigation, which I understand is to be avoided if at all possible.[1]

10.      As the foregoing clearly indicates that this Court should grant the instant motion and dismiss Herskowitz's cause of action, the inquiry should end here. However, Herskowitz's vicious, ad hominem attacks against me, albeit irrelevant to the issue now before

---

[1]I am also advised by my attorneys that it would not be possible to bring a counterclaim seeking interpretation of the entire agreement, as that would require adding parties to this suit which would destroy the diversity jurisdiction of this court.

this Court, constrain me to respond to them.

11. Herskowtiz's Affidavit categorizes the allegations made in my initial moving papers as either false or fraudulent, despite being fully supported by documentation. In support of his accusations, on the other hand, he provides either unsigned documents, irrelevant documents or, in many cases, no documents at all.

12. Herskowitz alleges that the "proposal" annexed to Exhibit "C" to defendant's initial moving papers contains "forged" initials. This is ludicrous. Although I am not a handwriting expert, it is obvious that the initials are Mr. Herskowitz's. Moreover, the document has little impact on the issues before the Court. It is absurd to think that anyone would forge a document for no purpose.

13 Herskowitz implies that the Certificate of Occupancy, which is fully in place, is fraudulent, was somehow fraudulently procured through my "influence" with government officials. He submits no facts in support of this scandalous allegation, but relies purely on innuendo. In fact, the Certificate of Occupancy, which is annexed hereto as Exhibit "K," was issued in the ordinary course of business of the municipality in which the Townhouse is located, and Herskowitz's intimations are an affront not only to me, but to the local Code enforcement officials as well.

14. Perhaps the most egregious example of the level to which Herskowitz will stoop is contained in his allegations regarding my "influence" with the Sullivan County Judiciary. In support of this outrageous charge, he alleges that two judges were required to recuse themselves in the Sullivan County action, and attaches, as Exhibit "J," an April 24, **2001** letter from the Town of Fallsburg Justice Court. But the Sullivan County action that is the subject

4

was commenced on March 20, **2002**.  See plaintiff's Exhibit "G."   The letter cited by plaintiff refers to a separate eviction action, albeit with the same parties, brought in the Fallsburg Justice Court in 2001.   It is proof only of plaintiff's willingness to  mislead this Court.

15.      Moreover, the two District Court Judges who recused themselves in that matter, Judge Kalter and Judge Reskin, did so because it was necessary and proper. My company had employed Judge Kalter's law firm for some closings, and Judge Resnick's wife had worked for my company.  The fact that both so readily recused themselves is proof only of their integrity, not of my "influence."

16.      I categorically deny Herskowitz's claim,  at Paragraph 12 of his Affidavit, that the "Stock Agreement" was subsequently modified.  Although I did receive $50,000 from Herskowitz in August of 2000, that sum represented a further payment by Herskowitz on account of the purchase price for the Townhouse, in consideration of which I permitted him to take temporary possession of the Townhouse in contemplation of closing -- at which time Herskowitz would pay the $50,000 balance of the purchase price and $20,000 in extras -- shortly thereafter.  However, at no time did I agree to give Herskowitz a $50,000 discount, nor was there any reason for me to do so.

17.      Moreover, Herskowitz's allegation that I was "desperate" for money and was seeking to hide something from my partner is simply preposterous.  My partner was fully aware of the arrangement.  Common sense in fact dictates that he had to have known.  The price for the model of townhouse (end unit, +/- 3600 square feet) contracted for by plaintiff was $220,000, as per the Proposal annexed as Exhibit "C" to the initial moving papers.  My partner and I agreed upon these values.  How could I possibly explain to him that I had agreed to sell one for $100,000 less?

18.     Herskowitz also seems to put some import into the fact that his wife did not sign the "Additional Rider."  But Mrs. Herskowitz did not sign any of the documents, including the Contract for Sale or any Riders thereto.  Interestingly, the only document she did sign is the so-called Modification Agreement.

19.     Herskowitz also charges, at footnote 2, page 6 of his affidavit, that "Kanovsky's statement that the Homeowner's Association had granted an easement relating to the Townhouse is another fabrication."  This issue has been a red herring throughout this dispute.  The real estate Contract provided that "Purchaser shall accept a title such as Seller's title company or any other reputable title company will approve and insure, without exception." (Plaintiff's Exhibit"A," Paragraph 7).  Seller tendered insurable title to Herskowitz. Moreover, the Homeowner's Association passed a resolution specifically designed to address plaintiff's concerns, which was annexed to the initial moving papers as Exhibit "F."  Finally, and perhaps most importantly, the Offering Plan, pertinent parts of which are annexed hereto as Exhibit "L," specifically provides:

> Section 1. ... In the event that any portion of any structure, as originally constructed by Sponsor, including any party wall or fence, shall protrude over an adjoining lot or common area, such structure ... shall not be deemed to be an encroachment upon the the adjoining lot or lots or common areas, and Owners shall neither maintain any action for the removal of a party wall .. nor any action for damages.  In the event there is a protrusion as described in the immediately preceding sentence, it shall be deemed that said Owners have granted perpetual easements to the adjoining Owner or Owners for continuing maintenance and use of the projection.  The foregoing shall also apply to any replacements of any structures, party walls or fences if same are constructed in conformance with the original structure.  The foregoing condition shall be perpetual in duration and shall not be subject to amendment of these covenants and restrictions.

20.     As set forth in the letter annexed to the initial moving papers as Exhibit "G,"

the Seller was ready, willing and able to deliver title to Herskowitz in full compliance with the Contract.

21.    Yet Herskowitz persisted in his stubborn refusal to proceed to closing, and in his groundless insistence that he was entitled to a specific – although entirely superfluous – easement agreement. Obviously, this issue was fabricated by Herskowitz to further delay the closing while placing the blame on me. Shockingly, despite being provided with everything that he ever requested and more, he continues to insist   even to this Court – that "Kanovsky was unable to deliver title as required." It is axiomatic that a purchaser is not entitled to create his own standard of title where the contract call for insurable title, and is precisely what the seller tendered.

22.    In short, despite his vitriol, Herskowitz raises no issues that refer to the question at hand. Instead of pointing to any real reason why this Court should exercise jurisdiction over this matter despite the exceptional circumstances, he resorts to unsubstantiated, ad hominem attacks and veiled threats. It is respectfully submitted that this Court grant defendant's motion and defer to the Sullivan County court, which is the proper and appropriate court to resolve this dispute in a global manner.


                                                    _____
                                                    Nachman Kanovsky


Sworn to before me this
12th day of August, 2004

_____
Notary Public

LAURENCE M. SKLAW
Notary Public, State of New York:
No. 02SK6056885
Qualified in Westchester County
Commission Expires June 4, 20_0_

                                        7



# New York State
# Unified Court System
## Search by Index Number

### Results of Searching For Index Number 585/02
### in Sullivan County

| County | Index No (Click below for case information) | Plaintiff | Defendant | Attorney/Firm (Click below for attorney information) | Attorney For | Appearance Date (Next or Last Appearance) | On For | Before Justice | Activity Count (Click for Appearance Info) |
|--------|---------|-----------|-----------|--------------|------|-----------|--------|----------------|----------------|
| Sullivan | 0585/2002 | VCV DEVELOPMENT CORP. CATSKIL | HERSKOWITZ, ROBERT AND HERSKO | JOSEPH & HERZFELD | D | 01-MAY-03 | Hearing | MEDDAUGH | 6 |
| | | VCV DEVELOPMENT CORP. CATSKIL | HERSKOWITZ, ROBERT AND HERSKO | KALTER, KAPLAN & ZEIGER | P | 01-MAY-03 | Hearing | MEDDAUGH | 6 |

Total Row Count in Report - 2
Row(s) 1 - 2

Elapsed Time .81 second(s)
User    PUBLIC

Page displayed on: Thursday , August 12 2004 11:56 A.M.
**NO ROW RETURNED means the search did not find any matches. Try again.**

If you think a case listed above should be closed please contact the appropriate Supreme Court Clerk's office.
Subscribe to CASETRAC to Receive Case Information & Decisions By Email CLICK HERE    New York State Unified Court System



**EXHIBIT J**



# CERTIFICATE OF OCCUPANCY

### TOWN OF FALLSBURG
### BUILDING DEPARTMENT
Box 830, S. Fallsburg, NY 12779
914-434-8810

No. 5641

10/16/00

Owner: _VCV Development Corp._

Address: _C.H. 104_ Unit #: _22_

_Loch Sheldrake, NY_

| Tax Map Number | Building Permit # | Fee |
|---|---|---|
| 17B-1-8 | 4285 | $ — |

Work Covered

_Townhouse_

CODE ENFORCEMENT OFFICER

# EXHIBIT K

THIS OFFERING PLAN HAS BEEN AMENDED.  SEE INSERT UNDER FRONT COVER.

**SEE PAGE iii FOR SPECIAL RISKS TO PURCHASERS**

OFFERING PLAN
FOR
VACATION VILLAGE HOMEOWNERS
ASSOCIATION, INC
Drawer 650
Loch Sheldrake
Sullivan County
Fallsburg  New York

---

Amount of Offering

Phase I:  $1,695,000.00          Phase II: $76,200.00
Total Amount of Phase I and Phase II:     $1,771,200.00

Number of Homes in Phase I:  58     Number of Homes in Phase II:  162
Maximum Number of Homes:   220

THE COST OF MEMBERSHIP IN VACATION VILLAGE HOMEOWNERS ASSOCIATION, INC.
IS INCLUDED IN THE PURCHASE PRICE OF THE HOMES.

---

SPONSOR AND SELLING AGENT:              ATTORNEYS FOR THE SPONSOR:

VCV DEVELOPMENT CORP.                    WEIDMAN & SIEGEL-BAUM
295 MADISON AVENUE; RM 700               270 MADISON AVENUE
NEW YORK, NEW YORK 10017                 NEW YORK, NEW YORK 10016
(212) 685-6100                           (212) 532-5334

Date of the Offering Plan:Sept. 12th. 1983

This Plan may not be used after Sept. 12, 1984 unless extended by amend-
ment.

---

THIS OFFERING PLAN IS THE SPONSOR'S ENTIRE OFFER TO SELL MEMBERSHIP
INTERESTS IN THE HOMEOWNERS ASSOCIATION.  NEW YORK LAW REQUIRES THE
SPONSOR TO DISCLOSE ALL MATERIAL INFORMATION IN THIS PLAN AND TO FILE
THIS WITH THE NEW YORK STATE DEPARTMENT OF LAW PRIOR TO SELLING OR
OFFERING TO SELL ANY MEMBERSHIP INTERESTS.  FILING WITH THE DEPARTMENT
OF LAW DOES NOT MEAN THAT THE DEPARTMENT OR ANY OTHER GOVERNMENT AGENCY
HAS APPROVED THIS OFFERING

EXHIBIT L

ARTICLE VIII    PARTY WALLS OR PARTY FENCES

Section 1.  General Rules of Law to Apply.  To
the extent not inconsistent with the provisions of this
Declaration and the By-Laws, the general rule of law
regarding party walls and liability for property damage due
to negligence or wilful acts or omissions, shall apply to
each party wall or party fence which is built as part of
the original construction of the Homes upon The Properties
and any replacement thereof.

In the event that any portion of any structure,
as originally constructed by Sponsor, including any party
wall or fence, shall protrude over an adjoining lot or
common area, such structure, party wall or fence shall not
be deemed to be an encroachment upon the adjoining lot or
lots or common areas, and Owners shall neither maintain any
action for the removal of a party wall or fence or
projection, nor any action for damages.  In the event there
is a protrusion as described in the immediately preceding
sentence, it shall be deemed that said Owners have granted
perpetual easements to the adjoining Owner or Owners for
continuing maintenance and use of the projection, party
wall or fence.  The foregoing shall also apply to any
replacements of any structures, party walls or fences if
same are constructed in conformance with the original
structure, party wall or fence constructed by Sponsor.  The
foregoing condition shall be perpetual in duration and
shall not be subject to amendment of these covenants and
restrictions.

Section 2.  Sharing of Repair and Maintenance.
The cost of reasonable repair and maintenance of a party
wall or party fence shall be shared equally by the Owners
who make use of the wall or fence in proportion to such
use.

Section 3.  Destruction by Fire or Other Casu-
alty.  If a party wall or party fence is destroyed or dam-
aged by fire or other casualty, any Owner who has used the
wall or fence may, to the extent such action is not incon-
sistent with the provisions of the By-Laws, restore it, and
if the other Owners thereafter make use of the wall or
fence, they shall, to the extent the cost of such restora-
tion is not covered by proceeds from the Association's
insurance policies, contribute to the cost of restoration
thereof in proportion to such use without prejudice, how-
ever, subject to the right of any such Owners to call for a
larger contribution from the others under any rule of law
regarding liability for negligent or wilful acts or
omissions.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------X
ROBERT HERSKOWITZ,

              Plaintiff,

       -against-

NACHMAN KANOVSKY,

              Defendant.
----------------------------------------------------X

CASE No. 04 CV 04582 (JSR)

**REPLY MEMORANDUM**

   _s//_ _____
Laurence M. Sklaw (LMS 7852)
Newman & Berger
Attorneys for Defendant
295 Madison Avenue
New York, NY 10017

## TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Reply Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Legal Argument

      I.  Because the Agreements are not Separable, this
Matter Should be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          A.      The Court's Retaining Jurisdiction Over this Matter
Will Result in Piecemeal Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          B.      Because the Agreements are Inseparable, the Litigation
Concerns Jurisdiction Over a Res . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          C.      The State Court Action Has Not Been Abandoned . . . . . . . . . . . . . . . . . . . . . 5

          D.      Plaintiff will Receive a Full and Fair Hearing in the
Sullivan County Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# TABLE OF AUTHORITIES

**Statutes and Rules**

Fed. R. Civ. P. 12(a)(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Case Law**

Arkwright-Boston Mfrs. Mutual Ins. Co. v. City of New York, 762 F.2d 210, 211 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Atwater & Co. v. Panama R.R.Co., 246 NY 519 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

EMS Industrial Corp v. Acciai Speciali Terni, 2000 U.S. Dist. Lexis 762 (S.D.N.Y. 2000) 3

Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 16, 74 L. Ed. 2d 765, 103 S. Ct. 927( 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Zodiac Enterprises, Inc. v. American Broadcasting Co., 81 AD2d 337, 339, 440 N.Y.S.2d 240 (1st Dept. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Treatises**

Corbin on Contracts § 132 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## PRELIMINARY STATEMENT

Plaintiff's Memorandum of Law is of a piece with the Herskowitz Affidavit. Instead of addressing the issues before the Court, it engages in the same attacks upon the character of Kanovsky, the same reference to mysterious tape recordings and unsigned documents with which Kanovsky is alleged to have "absconded." But none of this is of any moment before this Court. Herskowitz has provided no reason why this matter should not be dismissed in deference to the identical action pending in the Supreme Court of the State of New York, Sullivan County.

## REPLY STATEMENT OF FACTS

The facts of this matter have been stated in the initial moving papers. Counsel will take this opportunity only to respond to the more egregious misstatements in Herskowitz's Opposition.

Initially, it must be noted that the so-called separate contracts in this matter are inextricably linked. Herskowitz omits important information regarding the timing of the agreements. While he notes that the Sales Agreement is dated April 9, 2000 and the Additional Rider is dated April 15, 2000, he fails to acknowledge that the Rider attached to his own papers as Exhibit "A" is dated April 16, 2000. Surely Herskowitz does not seek to argue that that Rider, which he admits is part of the real estate contract yet is dated seven days later (and one day after the "Additional Rider") is also a discrete and separable agreement.

Herskowitz's entire case appears to rest upon some unsigned "modification" of the Additional Rider regarding the stock warrants, and he makes the unsubstantiated claim that

1

Kanovsky agreed to modify the agreement because he was "desperate" for money. Apparently, Herskowitz would have this Court believe that Kanovsky was willing to give Herskowitz a $50,000 discount (fully one-half of the $100,000 balance due) for the use of $50,000 for a few weeks. This translates into an effective annual interest rate of 2600 %, a level of desperation that is too absurd to contemplate, and which is belied by all of the signed documentation between the parties.

In any event, the simple fact is that none of this is of any import to the inquiry before the Court. Rather, the sole scrutiny is whether these issues could not adequately be dealt with in the pending state court action. Clearly they could, and they will be, and Herskowitz's transparent attempts at forum shopping should not be rewarded by this Court.

Finally, Herskowitz asserts that Kanovsky is in default as the result of not having served and filed an Answer to the Complaint. However, on July 21, 2004, a telephone conference was held by this Court in which permission was granted to file this Motion in Lieu of an Answer. Rule 12(a)(4)(A) provides that in the event a Motion to Dismiss in Lieu of an Answer is denied, the moving party shall have 10 days from the date of Notice of the Court's action to file a responsive pleading. Thus, Kanovsky is clearly not in default, yet Herskowitz again seeks to mislead the Court and cast Kanovsky in an unfavorable light.[1]

---

[1] In fact, Plaintiff's Opposition to this Motion is deficient, as the Herskowitz Affidavit filed therewith in the ECF system is unsigned, and therefore unsworn. Accordingly, Herskowitz has failed to allege any facts to counter those contained in Kanovsky's sworn Affidavit.

**LEGAL ARGUMENT**

**I.  BECAUSE THE AGREEMENTS ARE NOT SEPARABLE, THIS
MATTER SHOULD BE DISMISSED**

**A.  THE COURT'S RETAINING JURISDICTION OVER THIS MATTER
WILL RESULT IN PIECEMEAL LITIGATION**

Herskowitz argues that the real estate contract and the Additional Rider regarding the

warrants are "clearly separable," and that the Court's refusal to dismiss this matter and defer

to the State court action would not lead to piecemeal litigation.  This is erroneous.

"The Supreme Court has acknowledged that the most important factor in its decision

to approve the dismissal of the Colorado River action was the "'clear federal policy ... of

avoidance of piecemeal adjudication.'" EMS Industrial Corp v. Acciai Speciali Terni, 2000

U.S. Dist. Lexis 762 (S.D.N.Y. 2000), citing Moses H. Cone Mem'l Hosp. V. Mercury Constr.

Corp., 460 U.S. 1, 16, 74 L. Ed. 2d 765, 103 S. Ct. 927( 1983).   Moreover, in Arkwright-

Boston Mfrs. Mutual Ins. Co. v. City of New York, 762 F.2d 210, 211 (2d Cir. 1985), the

Second Circuit upheld the lower court's dismissal on abstention grounds, noting:

> As the suits all arise out of the [same set of facts], they should be tried in one
> forum.   Maintaining virtually identical suits in two forums under these
> circumstances would waste judicial resources and invite duplicative effort.
> Plainly, avoidance of piecemeal litigation is best served by leaving these suits
> in the state court.

In the instant matter, it is impossible to avoid piecemeal litigation if this matter is tried

in both forums, as all parts of the contract in question must be read together in order for its

meaning to be construed.  Moreover, in the event that this Court denies the instant motion,

Kanovsky could not bring a Counterclaim, as the corporate signatories to the real estate contract and Mrs. Herskowitz, all of whom are necessary parties as signatories to the real estate contract, share New York citizenship, and would thus defeat diversity.

Most importantly, Herskowitz's position that the two agreements are separable is unsupportable as a matter of law. If, as Herskowitz urges, the "Additional Rider" regarding the stock warrants is a discrete contract, separate and apart from the real estate contract, it must fail for lack of consideration. The Rider provides, in its entirety:

> Notwithstanding anything in the contract or the previous riders Robert Herskowitz will tender to Nachman Kanovsky by May 15th 2000, 15,000 warrants exercisable at $1.00 per share of Urban Cool Network. At Nachman Kanovsky's sole and absolute discretion upon notification to Robert Herskowitz no less than 3 days prior to closing, Robert Herskowitz will be obligated to purchase said warrants for $100,000, payable simultaneously with closing of title to townhouse 77 at Vacation Village, Loch Sheldrake, NY.

Without reference to the real estate contract, Kanovsky has no obligations under this Rider. He is simply to obtain the warrants, and then decide what to with them. There is no bargained-for exchange, extinguishment of a relationship, or surrender of any right on the part of Kanovsky. See, 1 Corbin on Contracts § 132 at 564 - 65 (1963). Of course, it is not Kanovsky's position that the Additional Rider fails for lack of consideration. Rather, it is clear that this document must be read in conjunction with the real estate contract for sale of the townhouse, to which it expressly refers. When read in that context, there is ample consideration, and the agreement is fully enforceable.

It is axiomatic that a contract must be interpreted in the context of the whole agreement. "A contract must be read as a whole in order to determine its purpose and intent, and single clauses cannot be construed by taking them out of their context and giving them an

interpretation apart from the contract of which they are a part." Zodiac Enterprises, Inc. v. American Broadcasting Co., 81 AD2d 337, 339, 440 N.Y.S.2d 240 (1st Dept. 1981), citing Atwater & Co. v. Panama R.R.Co., 246 NY 519 (1927). In arguing for the severability of the Additional Rider in order for this Court to exercise its jurisdiction, Herskowitz ignores this most basic rule of construction, and urges the Court to engage in piecemeal litigation. This is not the mandate of Colorado River. Rather, the inseparability of the agreements in this case constitutes precisely the type of exceptional circumstance which provides the Court with the discretion to abstain from hearing this matter. Moreover, Herskowitz's agreement to dismiss the counterclaim regarding this issue from the pending state court matter would not solve this problem, as all of the contract documents must be considered together in order to give them any force, and the state court would be obligated to consider and interpret the Additional Rider as part of the underlying contract.

### B.  BECAUSE THE AGREEMENTS ARE INSEPARABLE, THE LITIGATION CONCERNS JURISDICTION OVER A RES

As noted previously, the full adjudication of this matter will require the Court to determine the ownership of a res, the townhouse located in Fallsburg, Sullivan County, New York. While not strictly an in rem action, property rights are greatly implicated, and in the event that Kanovsky is successful, there may well be proceedings directly related to the property in question.

### C.  THE STATE COURT ACTION HAS NOT BEEN ABANDONED

Herskowitz repeatedly claims that the Sullivan County action has somehow been "abandoned," and thus the fact that it predates this litigation by some two years is of no moment. But the Sullivan County action has not been abandoned. Rather, it is listed on the docket of Sullivan County as being active, and there have been appearances on both sides. If the pace of that litigation is not proceeding to Herskowitz's satisfaction, he is free to request a discovery conference, file a motion to compel discovery or preclude evidence, or file his own Note of Issue.

### D. PLAINTIFF WILL RECEIVE A FULL AND FAIR HEARING IN THE SULLIVAN COUNTY ACTION

Herskowitz claims that because of Kanovsky's "influence," Herskowitz will be unable to obtain a full and fair hearing of his claim in the Sullivan County court. As proof of this claim, he asserts that two judges in Sullivan County have been disqualified from the matter. But the documentation that has been supplied in support of that claim are for an entirely separate matter, an eviction proceeding commenced in 2001 in the Fallsburg Justice Court pursuant to New York Real Property and Procedure Law. The Sullivan County action, which is the one with which we are concerned, was not commenced until 2002. The correspondence annexed to Herskowitz' motion papers as Exhibit "J" is for the 2001 eviction, not the Sullivan County action, and involves the disqualification of local district Judges for the Town of Fallsburg, not Supreme Court Justices in Sullivan County. Moreover, the Fallsburg Judges recused themselves as the result of a prior relationship with Kanovsky's company, one business, one personal, thus attesting to the integrity of the judiciary, despite Herskowitz's characteristic attempts to impugn it.

As such, there is no reason whatsoever to believe that Herskowitz could not receive a fair trial, despite his attempts to further mislead this Court.

## CONCLUSION

For the reasons stated herein, as well as in the initial moving papers in this matter, it is respectfully requested that an Order be entered dismissing this matter in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:    New York, New York
           August 11, 2004

s//_____
Laurence M. Sklaw (LS7852)
Newman & Berger
Attorneys for Defendant
295 Madison Avenue
New York, New York 10017
(212) 725-9191